**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**WILLIE KNIGHT, III,**
      **Plaintiff,**

**vs.**                    **Case No.: 3:08cv50/RV/MD**

**J. WHEELER,**
      **Defendant.**

_____

## REPORT AND RECOMMENDATION

      This case filed pursuant to 42 U.S.C. § 1983 is before the court upon defendant's motion for summary judgment filed on March 4, 2009.  (Doc. 42).  Plaintiff has responded in opposition to the motion.  (Docs. 54, 55).  Upon review of the evidence in the summary judgment record, it is the opinion of the undersigned that defendant's motion should be granted in part and denied in part.

## BACKGROUND AND PROCEDURAL HISTORY

      This case involves an inmate assault and use of force at Santa Rosa Correctional Institution ("Santa Rosa CI") on July 10, 2007.  Plaintiff is suing Officer J. Wheeler, claiming that on July 10, 2007, defendant Wheeler facilitated an inmate assault on plaintiff and then used excessive force on him during the assault, in violation of the Eighth Amendment to the United States Constitution.  (Doc. 15, pp. 8-12).  Plaintiff also asserts a state law claim of battery.  (*Id*., p. 12).  Defendant Wheeler, in his motion for summary judgment, argues that he is entitled to summary judgment because plaintiff fails to establish a violation of his constitutional rights (based on the Eighth Amendment or conspiracy), and because defendant Wheeler

is entitled to qualified immunity. (Doc. 42).[1] Both parties have submitted evidence in support of their respective positions, including a videotape of the incident. (Doc. 59).


## FACTS[2]

At the time of the incident, plaintiff was a Close Management inmate. (Doc. 42, Ex. A). Close Management is "the confinement of an inmate apart from the general population, for reasons of security or order and effective management of the institution, where the inmate has demonstrated an inability to live in the general population without abusing the rights and privileges of others." FLA. ADMIN. CODE r. 33-601.800(1)(d).

On July 10, 2007, at approximately 8:49 a.m., plaintiff got into a verbal altercation with inmate Robert McKenzie, DC #198401, while in the F Dormitory Close Management dayroom. (Doc. 15, p. 8 ¶¶ 5, 6; Doc. 55, Knight Aff. ¶ 4). At that time, both inmates were in restraints, including handcuffs and velcro waistbelts. (*Id.*, ¶ 6). The velcro waistbelt keeps an inmate's hands stationary in the stomach area. (Doc. 55, Knight Aff. ¶ 4). Defendant Wheeler, who was assigned as a Close Management Housing Officer in F Dormitory, was in the dayroom. (Doc. 42, Ex. B-Wheeler Aff.). Approximately two minutes after the verbal altercation, defendant Wheeler called inmate McKenzie to him. (Doc. 15, p. 8 ¶ 7). McKenzie got up and walked over to Wheeler. During their conversation, defendant Wheeler loosened

---

[1] Summary judgment is not sought on plaintiff's state law battery claim.

[2] Most of the incident was captured by a security video camera in the dormitory where the events took place. The videotape is part of the record. *See* Doc. 59. The facts presented here are viewed in the light depicted by the videotape to the extent those facts are captured on camera. *See Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1769, 1776, 167 L.Ed.2d 686 (2007) (stating that when a videotape of an incident is part of the record, the court should view the facts in the light depicted by the videotape). However, not all material facts were captured by the camera due to the position of the camera and lack of audio. The remaining facts recited in the "Facts" section are drawn from evidence in the record and are either undisputed or, if disputed, viewed in the light most favorable to plaintiff, the non-moving party. *Snow ex rel. Snow v. City of Citronelle*, 420 F.3d1262, 1265 (11th Cir. 2005).

McKenzie's hand restraints. (*Id.*, ¶ 8; Doc. 55, Knight Aff. ¶ 4, Mitchell Aff. ¶ 3).[3] Approximately one minute later, Wheeler called plaintiff to him. During their conversation Wheeler "doublelocked" and tightened plaintiff's hand restraints. (*Id.*).

At approximately 9:04 a.m. the inmates were preparing to leave the dayroom. Plaintiff was sitting on the far left side of a metal bench. (Doc. 59 at 9:03:56). Inmate McKenzie slipped a hand out of his restraints and jumped on top of the bench. (Doc. 15, pp. 8-9 ¶ 9; Doc. 55, Knight Aff. ¶ 4, Mitchell Aff. ¶ 3; Doc. 59 at 9:04:14 - 9:04:16). As plaintiff rose and backed away, inmate McKenzie leaped at him and struck plaintiff in the face with his left arm/closed fist. McKenzie's arm was entirely free from restraint. (Doc. 15, pp. 8-9 ¶ 9; Doc. 55, Knight Aff. ¶ 4, Mitchell Aff. ¶ 3; Doc. 59 at 9:04:14 - 9:04:16). Plaintiff was still in hand restraints, including the velcro waistbelt. (*Id.*, pp. 8-9 ¶ 9). Neither inmate was in leg restraints. Plaintiff did not throw any punches or blows. (Doc. 55, Knight Aff. ¶ 5).

After the blow, plaintiff moved forward into inmate McKenzie as defendant Wheeler started toward the two inmates. Defendant Wheeler grabbed plaintiff by the upper torso and "in one motion as soon as contact was made slammed plaintiff to the ground head first. . . ." (Doc. 55, Knight Aff. ¶¶ 4-5; *see also* Doc. 15, p. 9 ¶ 10; Doc. 55, Mitchell Aff. ¶ 3; Doc. 59 at 9:04:17 - 9:04:20). Three seconds elapsed from the time defendant Wheeler first made contact with plaintiff until plaintiff was on the floor. (Doc. 59 at 9:04:18 - 9:04:20). Plaintiff had not refused any orders or resisted defendant Wheeler in any way.[4] Simultaneously inmate McKenzie, plaintiff's attacker

---

[3]Although defendant Wheeler states he does not recall loosening McKenzie's handcuffs or tightening plaintiff's, (Doc. 42, Ex. B-Wheeler Aff. ¶ 6), plaintiff has submitted evidence that he did. (Doc. 55, Ex. A-Knight Aff., Ex. B-Mitchell Aff., Ex. D-Report of Investigation). The videotape does not contradict plaintiff's evidence.

[4]Although defendant Wheeler states that he gave plaintiff a verbal order to stop fighting and plaintiff refused, plaintiff and his witnesses say plaintiff was not fighting and Wheeler gave no verbal order or warning. The videotape has no audio. For purposes of summary judgment the court must take plaintiff's version as true. Additionally, although defendant Wheeler goes on to state that after he wrapped his arms around plaintiff's upper torso and began moving him away from inmate McKenzie, plaintiff resisted by continuing to move in the direction of McKenzie, and that Wheeler

who had ignored several orders to cease his activity, was being restrained by a
different officer who had grabbed him by the waist and placed him against a wall.
(Doc. 42, Ex. D-Eccles Aff. ¶ 3; *see also* Doc. 59 at 9:04:18 - 9:04:21).

Plaintiff's head hit and bounced off of a metal seat before hitting the floor.
Plaintiff was provided a post use of force examination. He complained that his head
and face hurt. (Doc. 42, Ex. H-Johanson Aff. ¶ 4.A.; Ex. J, p. 1). The left maxillary
area (the area of the upper facial bones comprising the upper jaw area and lower
part of the eye socket) was edematous or swollen due to fluid in the tissue. Bleeding
from the left nostril was noted. The bleeding temporarily subsided with the
application of pressure. (*Id.*). X-rays of plaintiff's facial bones taken on July 11, 2007
reflected no fractures or dislocations. (Ex. H-Johanson Aff. ¶ 4.B.; Ex. J, p. 3). For
two weeks after the incident, plaintiff continued to suffer pain to his face and head,
several nosebleeds and migraine headaches. (Doc. 15, p. 9 ¶¶ 10-11; *see also* Doc.
42, Ex. J).

## DISCUSSION

### Summary Judgment Standard

In order to prevail on his motion for summary judgment, the defendant must
show that plaintiff has no evidence to support his case or present affirmative
evidence that plaintiff will be unable to prove his case at trial. *Celotex Corp. v.
Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986). If
defendant successfully negates an essential element of plaintiff's case, the burden
shifts to plaintiff to come forward with evidentiary material demonstrating a genuine

---

placed plaintiff on the floor in order to avoid losing his grip on plaintiff and to avoid the possibility
plaintiff would still get at McKenzie, (Doc. 42, Ex. B-Wheeler Aff. ¶ 4), plaintiff asserts to the contrary
that "in one motion as soon as contact was made" Wheeler slammed him to the floor, and that plaintiff
was neither uncooperative nor resistant. The videotape does not contradict or render implausible
plaintiff's version. As noted, it shows that 3 seconds elapsed between the time defendant Wheeler
reached plaintiff and threw him to the floor. Additionally, the videotape does not show plaintiff
moving forward once Wheeler makes contact him. (Doc. 59 at 9:04:18 - 9:04:20).

issue of fact for trial. *Id.* The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248. A fact is "material" if it "might affect the outcome of the suit under the governing law." *Id.,* 477 U.S. at 248, 106 S.Ct. at 2510. Plaintiff must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient. *Celotex Corp.*, 477 U. S. at 324 (quoting Fed.R.Civ.P. 56(e)). Plaintiff must either point to evidence in the record or present additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency. *Celotex Corp., supra*; *Owen v. Wille*, 117 F.3d 1235, 1236 (11th Cir. 1997) ("Rule 56(e) . . . requires the nonmoving party to go beyond the pleading and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'") (quoting *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 56(c), (e))); *Hammer v. Slater*, 20 F.3d 1137 (11th Cir. 1994).

Evidence presented by plaintiff in opposition to the motion for summary judgment, and all reasonable factual inferences arising from it, must be viewed in the light most favorable to plaintiff. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970); *Jones v. Cannon*, 174 F.3d 1271, 1282 (11th Cir. 1999). A motion for summary judgment should be granted if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment

as a matter of law." Fᴇᴅ. R. Cɪᴠ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. at 2552.

Qualified Immunity Standard

The doctrine of qualified immunity is a guarantee of fair warning. *McElligott v. Foley,* 182 F.3d 1248, 1260 (11ᵗʰ Cir. 1999). It shields government officials from individual capacity suits against them for acts that do not violate a clearly established statutory or constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Hope v. Pelzer*, 536 U.S. 730, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002); *Conn v. Gabbert,* 526 U.S. 286, 119 S.Ct. 1292, 1295, 143 L.Ed.2d 399 (1999) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)); *Powell v. Georgia Dep't of Human Resources*, 114 F.3d 1074 (11ᵗʰ Cir. 1998). Qualified immunity seeks to ensure that individuals can reasonably anticipate when their conduct may give rise to liability, and hence, liability only attaches if the contours of the right allegedly violated are sufficiently clear that a reasonable person would understand that what he is doing violates that right. *McElligott*, 182 F.3d at 1260 (citing *United States v. Lanier,* 520 U.S. 259, 270, 117 S.Ct. 1219, 137 L.Ed.2d 432 (1997)).

In order to receive qualified immunity, the public official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11ᵗʰ Cir. 2002) (internal quotation marks omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate." *Lee v. Ferraro* at 1194.

The Supreme Court has established a two-pronged test for evaluating a claim of qualified immunity: (1) whether a constitutional right has been violated on the facts alleged; and (2) whether the right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). The court may exercise

its discretion in deciding which of the two prongs should be addressed first in light of the circumstances in the particular case at hand. *Pearson v. Callahan*, 555 U.S. ---, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009). The court may grant qualified immunity if the plaintiff fails to carry his burden on either of the two prongs. *See, e.g., Pearson*, 129 S.Ct. at 822-23 (evaluating only *Saucier*'s second prong and holding that law enforcement officers were entitled to qualified immunity because the unlawfulness of their conduct was not clearly established).

<u>Eighth Amendment Standard - Failure to Protect</u>

Prison officials have a duty to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 1976, 128 L.Ed.2d 811 (1994) (citations omitted). However, not every injury suffered by one prisoner at the hands of another translates into constitutional liability for the prison officials responsible for the victim's safety. *Farmer,* 511 U.S. at 834, 114 S.Ct. at 1977. To be held liable under the Eighth Amendment for failing to prevent an attack from other inmates, a correctional official must be found to have known and recklessly disregarded "an excessive risk to inmate health or safety." *Id.*, 511 U.S. at 837, 114 S.Ct. at 1979. The risk "must be an objectively substantial risk of serious harm," *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003) (citing *Farmer*, 511 U.S. at 834, 844-45), one that is beyond mere possibility, *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (per curiam).

With regard to the required state of mind, "there must be at least some allegation of a conscious or callous indifference to [the] prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail,* 642 F.2d 134, 136 (5th Cir. 1981)). The official must be subjectively aware of the risk, *Cottone*, 326 F.3d at 1358 (citing *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1028 (11th Cir. 2001)), meaning that he "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979. Whether an officer was aware of a risk of serious harm may be deduced from circumstantial evidence such as the obviousness of the situation confronting the officer. *Farmer*, 511 U.S. at 842-43, 114 S.Ct. at 1981. A mere negligent failure to protect an inmate does not state a claim under § 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986).

Also, a defendant may avoid liability by showing that he "did not know of the underlying facts indicating a sufficiently substantial danger and that [he was] therefore unaware of a danger, or that [he] knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent." *Farmer*, 511 U.S. at 844; 114 S.Ct. at 1982. A plaintiff's failure to give advance notice to prison officials of his fear of an inmate or of a specific threat is relevant, although not dispositive, to this inquiry. *See Carter v. Galloway*, 352 F.3d 1346, 1349-50 (11th Cir. 2003); *Farmer*, 511 U.S. at 848.

It must also be shown that the prison official responded to the risk in an objectively unreasonable manner. *Cottone*, 326 F.3d at 1358 (citing *Farmer*, 511 U.S. at 834, 844-45); *Marsh*, 268 F.3d at 1027 ("[O]fficials, to be liable, must be aware of a substantial risk of serious harm to the inmates and not take reasonable measures to alleviate that risk."). The officer must have a realistic opportunity to prevent the illegal conduct. *See Ensley v. Soper*, 142 F.3d 1402, 1407-08 (11th Cir. 1998); *Byrd v. Clark*, 783 F.2d 1002, 1007 (11th Cir. 1986); *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir. 1994). "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844, 114 S.Ct. at 1982-83. Finally, a plaintiff must show that the constitutional violation caused the injury. *Cottone*, 326 F.3d at 1359 (citing *Marsh*, 268 F.3d at 1028).

## Eighth Amendment Standard - Excessive Force

Claims of excessive force by corrections officials fall under the Eighth Amendment's proscription against cruel and unusual punishment. To sustain an Eighth Amendment challenge it must be shown that prison officials' actions amounted to an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). "Force is deemed legitimate in a custodial setting as long as it is applied 'in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm.'" *Skrtich v. Thornton*, 280 F.3d 1295, 1300 (11th Cir. 2002) (quoting *Whitley v. Albers*, 475 U.S. at 320-21, 106 S.Ct. 1078)). In determining whether an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force; the relationship between that need and the amount of force used; the extent of the threat to the safety of staff and inmates, as reasonably perceived by officials; the extent of injury; and any efforts made to temper the severity of the response." *Hudson v. McMillian*, 503 U.S. 1, 7-8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992); *see also Whitley*, 475 U.S. at 321, 106 S.Ct. at 1085; *Danley v. Allen*, 540 F.3d 1298, 1307 (11th Cir. 2008); *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir. 1999). In addition, the court must give a "wide range of deference to prison officials acting to preserve discipline and security," including when considering "[d]ecisions made at the scene of a disturbance." *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S.Ct. 1078 (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir. 1973)). The Court in *Whitley* narrowed the precise inquiry applicable when deciding whether officials are entitled to judgment as a matter of law:

courts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support <u>a reliable inference of wantonness in the infliction of pain</u> under the standard we have described, the case should not go to the jury.

*Whitley*, 475 U.S. at 322, 106 S.Ct. 1078 (emphasis added).

<u>Conclusions of Law Regarding Material Facts</u>

      A.      Deliberate Indifference to Assault by Inmate McKenzie

The court will first address plaintiff's claim that defendant Wheeler created, or was deliberately indifferent to, an excessive risk to plaintiff's safety. The parties do not dispute that defendant Wheeler was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. Therefore, the burden in on plaintiff to show that qualified immunity is not appropriate.

To survive summary judgment, plaintiff must produce sufficient evidence of three elements, one of which is defendant Wheeler's deliberate indifference. This requires evidence from which a jury could reasonably find that defendant Wheeler was aware of and disregarded a substantial risk to plaintiff's safety. *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). In determining subjective knowledge, a court is to inquire whether the defendant was aware of a "particularized threat or fear felt by [the plaintiff]." *Carter*, 352 F.3d at 1350. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842, 114 S.Ct. at 1981.

On the issue of deliberate indifference, plaintiff alleges that two minutes after plaintiff's verbal altercation with inmate McKenzie, defendant Wheeler called inmate McKenzie over to him and loosened his hand restraints, then called plaintiff over to him and tightened plaintiff's hand restraints. Ten to fifteen minutes later inmate McKenzie, having slipped a hand from his restraint, attacked plaintiff. (Doc. 15). Defendant Wheeler, in his affidavit, states: (1) he does not recall loosening

McKenzie's hand restraints or tightening plaintiff's; (2) on occasion, if an inmate complains of the hand restraints being too tight, and Wheeler observes that the restraints may be too tight, he will loosen the restraints so that his [Wheeler's] thumb and finger just touch under the restraint; (3) if he had loosened an inmate's restraints it would have been because he believed they were too tight; (4) if he had tightened an inmate's restraints it would have been because he believed they were too loose; (5) he has never loosened an inmate's restraints to enable the inmate to slip out of them, and (6) he has no animosity toward plaintiff and no reason or desire to see one inmate attack another. (Doc. 42, Ex. B-Wheeler Aff. ¶¶ 6,7).

To rebut defendant Wheeler's evidence, plaintiff has submitted his own affidavit and that of an inmate witness in which they state that defendant Wheeler did, in fact, loosen inmate McKenzie's restraints and tighten plaintiff's. (Doc. 55, Ex. A-Knight Aff., Ex. B-Mitchell Aff.). Plaintiff has also submitted a portion of a Report of Investigation from the Inspector General's office, in which it is reported that defendant Wheeler stated he "remembered loosening an inmate's restraints and leaving enough room for slight movement but . . . did not remember which inmate it was." (Doc. 55, Ex. D).

Taking plaintiff's facts as true, he has not provided sufficient evidence of deliberate indifference to a substantial risk of serious harm. Even inferring to plaintiff's benefit that defendant Wheeler witnessed the verbal altercation between plaintiff and inmate McKenzie (an assertion plaintiff does not expressly make), plaintiff provides no evidence suggesting that a fight was imminent or that inmate McKenzie threatened him during the verbal altercation. The only detail plaintiff provides concerning the dispute is an inmate witness' statement that it was "a verbal argument about a board game." (Doc. 55, Ex. B-Mitchell Aff.). From this evidence, a jury could not reasonably infer that the dispute itself, although presumably noisy and heated, put defendant Wheeler on notice of an excessive risk to plaintiff's safety. *Carter*, 352 F.3d at 1350 (discussing "serious threat"

requirement and noting that "derogatory and argumentative statements" are not equivalent to threats).

Furthermore, assuming plaintiff and his inmate witness actually personally observed defendant Wheeler loosen McKenzie's restraints two minutes after the verbal altercation, (doc. 55, Exs. A, B),[5] that fact does not provide a sufficient basis to infer that Wheeler knew there was a substantial likelihood plaintiff would be harmed.  Plaintiff offers no evidence from which to infer that Wheeler <u>knew</u> he was loosening the restraint in such a manner or to the extent that McKenzie would likely break free.  For example, plaintiff, although a witness to the loosening, does not suggest that it was obvious defendant Wheeler was loosening the restraints too much.  Nor does plaintiff allege Wheeler did or said anything before, during, or after loosening McKenzie's restraints to indicate he knew there was a substantial likelihood McKenzie would break free or harm plaintiff.  Defendant Wheeler's statement to the IG's office that he "remembered loosening an inmate's restraints and leaving enough room for slight movement . . . ." (doc. 55, Ex. D), does not support a finding that Wheeler knew he had loosened them to the point where he was exposing plaintiff to a substantial risk of serious harm.  Nor does the fact that Wheeler used force on plaintiff after the attack support a finding that Wheeler intended for McKenzie to attack plaintiff to ensure plaintiff would be harmed either by inmate McKenzie or the defendant (*see* doc. 15, p. 9 ¶ 9).

Notably, although plaintiff states he had personal contact with defendant Wheeler just after the verbal altercation and the loosening of McKenzie's restraints, plaintiff does not allege he expressed to Wheeler concern for his physical safety or the security of inmate McKenzie's restraints.  Nor does plaintiff allege he told Wheeler that he feared McKenzie or felt threatened.

---

[5]"[S]worn statements must be made on personal knowledge, and statements based in part upon information and belief cannot raise a genuine issue of fact."  *Moulds v. Bullard*, 2009 WL 2488182, at *2 (11th Cir. Aug. 17, 2009) (unpublished opinion) (citing *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)).

The fact that inmate McKenzie ultimately slipped his hand free and attacked plaintiff provides evidence of negligence; however, there must be more than negligence to impose liability under the Eighth Amendment. *Farmer*, 511 U.S. at 838, 114 S.Ct. at 1979 ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."); *Carter*, 352 F.3d at 1350 ("[M]erely negligent failure to protect an inmate from attack does not justify liability under section 1983."); *see also Chatham v. Adcock*, 2009 WL 1788719, at *11 (11th Cir. June 24, 2009) (unpublished opinion) ("[N]egligence is not the constitutional standard by which Defendants' actions or omissions are to be judged.").

When viewing the evidence in a light most favorable to plaintiff, a claim for deliberate indifference has not been established. Therefore summary judgment on this claim is appropriate.

B.     Excessive Force

As to plaintiff's excessive force claim, several genuine disputes of material fact exist which preclude summary judgment in favor of the defendant. These disputes include, but are not limited to plaintiff's actions after the attack, the facts known to defendant Wheeler at the time he approached plaintiff, whether plaintiff was given and disregarded any verbal orders, and whether plaintiff resisted Wheeler.

As to the first *Whitley* factor, the need for the application of force, there is no dispute that inmate McKenzie attacked plaintiff. There is, however, a dispute over what happened next. The videotape confirms that the two inmates physically engaged after the blow. (Doc. 59 at 9:04:17 - 9:04:18). Defendant Wheeler and his witnesses say they were fighting. Plaintiff and his witnesses say it was purely an attack on plaintiff and plaintiff was not fighting. But because the two inmates were physically engaged, it was not unreasonable for defendant Wheeler to use some degree of restraint to separate them and restore order. *See Cockrell v. Sparks*, 510 F.3d 1307, 1311 (11th Cir. 2007) (reasoning that "guards may use force when

necessary to restore order and need not wait until disturbances reach dangerous proportions before responding.") (internal quotation marks omitted). Therefore, this factors weighs in favor of defendant Wheeler.

The second factor weighs in favor of plaintiff. There are several genuine disputes concerning the relationship between the need for force and the amount of force used. Defendant Wheeler argues that the force he used was justified and proportionate to the situation he faced. To support his contention he has submitted evidence that plaintiff was fighting; that he verbally ordered plaintiff to stop; that plaintiff refused to obey his order; that he wrapped both of his arms around plaintiff's upper torso while moving plaintiff away from inmate McKenzie; that plaintiff resisted by continuing to move in the direction of inmate McKenzie; and that Wheeler "placed" plaintiff on the floor in order to avoid losing his grip on him and to avoid the possibility plaintiff would still get at inmate McKenzie who was being restrained by other staff. (Doc. 55, Ex. B-Wheeler Aff. ¶ 4, Ex. D-Eccles Aff. ¶ 3).

Plaintiff disputes these facts and argues that the amount of force defendant Wheeler used on him, a restrained and compliant inmate who was the victim of an attack and who was not resisting or disobeying orders, had no penological purpose. In this regard, plaintiff submitted evidence that he did not create a disturbance; that he was the victim of inmate McKenzie's attack; that he did not attempt to fight McKenzie or resist any officers; that Wheeler knew plaintiff's hands were "doublelocked" to his stomach area; that defendant Wheeler did not give him a verbal order or warning nor did plaintiff ignore any orders or warnings; that defendant Wheeler immediately rushed and grabbed plaintiff and "in one motion as soon as contact was made slammed plaintiff to the ground head first;" and that at no time did plaintiff resist defendant Wheeler, move toward inmate McKenzie, or try to break free. (Doc. 55, Knight Aff. ¶¶ 4-5; *see also* Doc. 15, p. 9 ¶ 10; Doc. 55, Ex. B-Mitchell Aff. ¶ 3).

The videotape does not resolve several of these disputes. It does reveal that after plaintiff was struck by inmate McKenzie, he moved forward into McKenzie, and the two were physically engaged. It is for the jury to decide whether plaintiff was acting aggressively or merely being pulled forward. It is also for the jury to decide whether plaintiff ignored any verbal orders (as noted, the videotape has no audio).

The videotape does reveal that only 3 seconds elapsed between the time defendant Wheeler reached plaintiff and threw him to the floor. This supports an inference that plaintiff did not resist defendant Wheeler because he had no time to. Also according to the videotape, plaintiff did not move forward once the defendant made contact with him. (Doc. 59 at 9:04:18 - 9:04:20). This would also support an inference that plaintiff was not resisting. And finally, the videotape makes clear that plaintiff was not merely "placed" onto the floor, he was picked up and thrown head first onto the floor. (*Id.*, 9:04:18 - 9:04:21).

The videotape and affidavit of Correctional Officer David Eccles further reveal that the force used against inmate McKenzie, the attacker who had freed one hand from his restraints and ignored "several" orders to cease fighting, was much less. (Doc. 42, Ex. D-Eccles Aff. ¶ 3). Officer Eccles restrained inmate McKenzie by grabbing him around the waist and placing him against a wall. (Doc. 42, Ex. D-Eccles Aff. ¶ 3; *see also* Doc. 59 at 9:04:18 - 9:04:21).

All in all, a jury could reasonably find plaintiff's facts to be the true facts of this case. In that event, the second *Whitley* factor would favor finding a constitutional violation even if some degree of restraint was necessary to separate the two inmates. Unlike *Fennell v. Gilstrap*, 559 F.3d 1212 (11th Cir. 2009), a case the defendant has provided as supplemental authority, (doc. 44), plaintiff asserts that his hands were fully secured, and that he neither created a disturbance, refused to follow orders of prison officials, nor resisted prison officials at any time.[6] *See id.*

---

[6]In *Fennel*, the Eleventh Circuit held that a sheriff's deputy's kick to pretrial detainee's face, which resulted in fractures, did not constitute excessive force in violation of Fourteenth Amendment, where the deputy saw the detainee struggling with six other officers who were unable to restrain him,

(holding that a sheriff's deputy's kick to a pretrial detainee's face, which resulted in fractures, did not constitute excessive force in violation of Fourteenth Amendment, where the deputy saw the detainee struggling with six other officers who were unable to restrain him, the detainee had not yet been secured when the deputy kicked him, the deputy intended to kick the detainee in the arm rather than the face, the detainee had grabbed the arm of another officer, and the officers made an immediate offer of medical care).

The next factor is the extent of the threat plaintiff posed to the safety of staff and inmates, as reasonably perceived by the defendant. Naturally, any physical disturbance involving inmates poses some threat to the safety of staff and inmates. But the plaintiff here asserts that defendant Wheeler knew it was inmate McKenzie and not plaintiff who posed the threat, because Wheeler knew: (1) that inmate McKenzie alone had caused the disturbance; (2) that inmate McKenzie's hand restraints had been loosened and he had slipped one hand free, (3) that plaintiff's hand restraints had been tightened and were secured to his stomach area, (4) that plaintiff had been struck by inmate McKenzie and was in need of help, and (5) that plaintiff was not being aggressive or non-compliant. (Doc. 15, Doc. 42, Ex. A-Knight Aff., Ex. B-Mitchell Aff.,[7] Ex. E1-Fitzpatrick Statement.[8]). Having viewed the videotape in the light most favorable to plaintiff, it does not contradict plaintiff's version. The

---

the detainee had not yet been secured when the deputy kicked him, the deputy intended to kick the detainee in the arm rather than the face, the detainee had grabbed the arm of another officer, and the officers made an immediate offer of medical care).

[7]Inmate Mitchell states in his affidavit that: "I observed inmate McKenzie jumping across some benches towards inmate Knight while slipping out of his handcuffs and hit inmate Knight with a closed fist. At which time I observed Officer Wheeler immediately drop his key and rush to inmate Knight and grab him by the upper torso and slam him to the ground."

[8]A witness statement prepared by inmate Fitzpatrick states that he "observed inmate in 14 bottom McKenzie attack inmate Willie Knight when he had slippen [sic] his handcuff and inmate Willie Knight was trying to get Officer Wheeler['s] help, but to no avail and that's when Officer Wheeler picked inmate Knight up off the floor and power slammed him on the floor while he was still in handcuff when he was the one attacked. Officer Wheeler did nothing to help inmate Knight . . . ."

parties' evidence raises genuine disputes of material fact concerning what defendant Wheeler reasonably perceived. (Doc. 42, Ex. B-Wheeler Aff. ¶ 4; Ex. C-Butler Aff., Ex. D-Eccles Aff.; *see also* Doc. 55, Ex. E2-Delions Statement[9]).

The next factor is the extent of plaintiff's injury. As earlier described, plaintiff states that his head bounced off of a metal chair and then slammed into the floor. Plaintiff states he suffered "a malignant head injury, facial damage and swelling which caused internal bleeding damage which caused plaintiff to spit up blood for 2 weeks straight with unbe[a]rable pain, constant nose bleeds, and perman[en]t migra[i]ne headaches." (Doc. 12, p. 9 ¶ 11). Plaintiff's medical records reveal that after the use of force plaintiff complained his head and face hurt. The left maxillary area was edematous or swollen due to fluid in the tissue. Bleeding from the left nostril was noted. The bleeding subsided with the application of pressure. (Doc. 42, Ex. H-Johanson Aff. ¶ 4.A.; Ex. J, p. 1). X-rays of plaintiff's facial bones taken on July 11, 2007 reflected no fractures or dislocations. (Ex. H-Johanson Aff. ¶ 4.B.; Ex. J, p. 3). Plaintiff continued to suffer nosebleeds and migraine headaches for up to two weeks following the incident. (Doc. 15, p. 9 ¶¶ 10-11; *see also* Doc. 42, Ex. J). Even when taken in a light most favorable to plaintiff, the evidence does not support a finding that plaintiff's injury was serious. That does not mean however, that the force defendant Wheeler used was *de minimis*. *Hudson*, 503 U.S. at 7, 112 S.Ct. at 999 ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."). A jury viewing the videotape could reasonably find that

---

[9]An inmate witness statement submitted by plaintiff, that of inmate Delions, indicates that defendant Wheeler may have had his back to plaintiff and McKenzie at the time plaintiff was struck. Specifically, he states: "Inmate Knight was assaulted while in handcuffs by another inmate, Inmate McKenzie. Officer Wheeler was securing my roommate and myself when the incident occurred. Upon hearing the disturbance behind him, CO Wheeler left his security keep with my roommate's cuff and grabbed inmate Knight, the victim, and slammed him unnecessarily to the floor . . . ."

The videotape does not resolve the issue, as defendant Wheeler is out of the frame depicting McKenzie's blow to plaintiff. (Doc. 60 at 9:04:17).

defendant Wheeler used more than *de minimis* force on plaintiff, even though plaintiff did not suffer serious injury.

The last *Whitley* factor is what efforts, if any, were made to temper the severity of the response. The parties hotly dispute this factor. According to plaintiff's evidence, defendant Wheeler made no effort to temper the severity of his response -- he immediately slammed plaintiff to the floor. The videotape does not contradict this, as merely 3 seconds elapsed from the time defendant Wheeler first made contact with plaintiff until plaintiff was on the floor. Defendant Wheeler asserts that before "placing" plaintiff on the floor, he gave plaintiff a verbal order which plaintiff refused, and plaintiff resisted Wheeler's effort to physically restrain him. Viewing the evidence in plaintiff's favor, a jury could reasonably find that defendant Wheeler made no effort to temper the severity of his response.

In summary, resolving all factual disputes in plaintiff's favor, the evidence goes beyond a mere dispute over the reasonableness of defendant Wheeler's force, and would support a reliable inference of wantonness in defendant Wheeler's infliction of pain on plaintiff. In other words, evidence that a correctional officer slammed to the floor head first an inmate who was the victim of an inmate attack, who had not created a disturbance, whose hands were restrained to his stomach area, who had not disobeyed any orders or resisted any officer, and who had been secured by the officer wrapping his arms around him, supports a reliable inference that defendant Wheeler's force was gratuitous and excessive. Because plaintiff has put forward evidence sufficient to show excessive force in violation of the Eighth Amendment, he has overcome defendant's defense of qualified immunity. *Skrtich,* 280 F.3d at 1301 (holding that "a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court decisions in *Hudson* and *Whitley*." ); *see also Fennell*, 559 F.3d at 1216-17 (same).

**CONCLUSION**

Viewing the evidence in the light most favorable to plaintiff, the non-movant, there is insufficient evidence for a reasonable trier of fact to conclude that defendant Wheeler orchestrated, or failed to protect plaintiff from, a substantial risk to plaintiff's safety. Therefore, plaintiff's Eighth Amendment claim based on inmate McKenzie's assault must fail.

With respect to plaintiff's Eighth Amendment excessive force claim against defendant Wheeler, several genuine disputes of material fact exist which preclude summary judgment.

Accordingly it is respectfully RECOMMENDED:

1.   That defendant Wheeler's motion for summary judgment (doc. 42) be GRANTED IN PART AND DENIED IN PART AS FOLLOWS:

   a.  That summary judgment be GRANTED in favor of defendant Wheeler on plaintiff's claim that defendant Wheeler violated the Eighth Amendment by orchestrating, or failing to protect plaintiff from, a substantial risk of assault by inmate McKenzie.

   b.   That summary judgment be DENIED on plaintiff's claim that defendant Wheeler violated the Eighth Amendment by using excessive force on him.

2.   That this matter be referred to the undersigned for further pre-trial proceedings on plaintiff's Eighth Amendment excessive force claim and state law battery claim.

At Pensacola, Florida this 5th day of October, 2009.

/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

Case No: 3:08cv50/RV/MD

## <u>NOTICE TO THE PARTIES</u>

**Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).**